We will first hear from Mr. Nicholson on behalf of the defendant Cory Forbito. The District Court in this case committed a reversible plain error when it concluded that Mr. Forbito's offense level should be enhanced because his prior conviction in Louisiana for domestic abuse aggravated assault was a crime of violence under the sentencing guidelines section 4B1.2. This is true because of three things. The District Court first committed error by concluding that his prior conviction for this offense was a crime of violence and that error was plain under this court's prior ruling in Garner, which concluded that Louisiana assaults are not crimes of violence under the guidelines. And third, the error affected Mr. Forbito's substantial rights because we have a sentence that was never founded on a correctly calculated guideline that involved a judge that tied the sentence to the guidelines that were incorrectly calculated. And therefore, we have a sentence that in view of the entire record is undermined in its confidence that we have one that is fair under the circumstances. For background, Mr. Forbito pled to the charge of being a felon in possession of a firearm. The pre-sentence report concluded that his base sentence level should be 22 and that was enhanced because the PSR concluded that he had previously suffered a conviction for a crime of violence. Now, the relevant section of the guidelines here points to the crime of violence definition out of section 4B1.2. Now, in recent years, of course, this court has issued rulings about what constitutes a crime of violence under that provision of the guidelines. Two very important cases come to mind when we look at that. First, in 2016, United States v. Torres-Jaime, this court concluded that under the enumerated offense clause that aggravated assault offenses are not crimes of violence if they can be conducted negligently. Then, in 2021, in Greer, this court concluded that crimes that can be committed either negligently or recklessly do not qualify as crimes of violence under the fourth clause of 4B1.2. So then enter Garner. Garner was a case where this court was asked to consider how Louisiana's aggravated assault with a firearm statute fit within this milieu. First, Garner addressed that question. Does Louisiana's aggravated assault with a firearm statute constitute a crime of violence under section 4B1.2? That's the narrow question it was forced to answer. But in order to answer that question, it had to address a larger question. And that addressed what do we do with Louisiana assault statutes or Louisiana assault crimes. Under the assault statute in this case, assaults must be done with an intentional act or an intent to commit an intentional act. Now, in other states, we would hear intentional and that shouldn't set forth what we would expect. But as Garner recognized that in this state, those terms of intent carry what they call specialized meanings. Now, it focused, the Garner decision, focused first on a specific intent but then addressed general intent because that's what we see with the Louisiana assault crimes are general intent crimes. It described those crimes as being, quote, totally unconcerned with the defendant's state of mind. That they were focused on what may be reasonably expected to follow from the offender's voluntary act and that they could be charged irrespective of any subjective desire on the defendant's part to have accomplished any such result. So from Garner, we get the rule that we find at the beginning of the last paragraph of page 683 in the decision that says general intent crimes in Louisiana can be done with reckless or negligent states of mind. Given that rule, the decision of Garner is very clear. Based on what we have with Greer, we know that if an offense can be conducted recklessly or negligently, then it cannot constitute a crime of violence under the force clause. But Garner doesn't deal with this particular offense. You're arguing that it should be extended to include the offense at issue in this case. Your Honor, I would respectfully say that Garner creates a rule about Louisiana assault crimes as general intent crimes broadly and then it applies that. I understand the argument. I just want to confirm with you that you're arguing that general basis includes several other offenses, but Garner itself, the case itself, dealt with an offense different than this one. It did. But a close reading of Garner and the citations that it provides in there shows that Garner was willing to mix and match at least two statutes. One is the aggravated assault with a firearm statute that was at issue in that case. And then also it mixes and matches with the Boner decision, which the relevant pages that it cites deals exclusively with the statute at issue here, domestic abuse, aggravated assault. The Boner decision involved a case that did initially address convictions for both the statutes that we're talking about, both for domestic abuse, aggravated assault that we have here, and aggravated assault with a firearm. The aggravated assault with a firearm statute is dealt with very quickly. It's dealt with on page 136 and 137 of Boner. That conviction was a non-unanimous jury decision. It was 11 to 1. And so the first way that Boner dealt with that case was addressing the constitutionality of that statute. The Boner decision concludes any consideration of the aggravated assault with a firearm statute in the very first sentence of page 137. From that point, 137, the entirety of page 138, and then into page 139 of the Boner decision, deals exclusively with the statute at issue here. It deals with the domestic abuse, aggravated assault statute. And so in citing to the Boner decision, when Garner goes and makes conclusions about the aggravated assault with a firearm statute, it points to page 138 of the Boner decision, which again deals exclusively with the statute at issue here. In other words, Garner knew if you look at the paragraph that ends page 683 of the Garner decision, it makes a statement that starts with thus and makes determinations about what is involved in a general intent crime. And then it moves on and makes the statement that aggravated assault with a firearm is a general intent crime. But the citation it gives to that is to page 138 of Boner, which has nothing to do with aggravated assault with a firearm. It has exclusively to do with the statute at issue here. Counsel, you've lost me because we have said, the Supreme Court has said, that we don't interpret judicial decisions like statutes. And so this whole parsing of the cross-references and what was reasonably in the mind of the author of one opinion when they cite to a page of another, I'm having a little bit of a hard time following you because that's just obviously not the way that we read these things or write them when we write them. So can you back up with me and maybe start at a different level of generality and show me where this I understand your point about Louisiana law and general intent crimes. But the government has pointed out that you have no argument about the second element in this crime, this statute. So Garner's about subsection 4. We're on subsection 7. In subsection 7, it refers to with a dangerous weapon. With a dangerous weapon is defined by the Louisiana legislature to say something that is used in a manner to, and then goes on to explain, you know, causing serious or substantial death or bodily harm, et cetera, et cetera. Doesn't that just in this case, I mean, whatever your client pled to, it had to be, quote, used in a, I'm sorry, in the manner used is calculated or likely to produce death or great bodily harm? Your Honor, we respectfully say no. And this court has actually addressed that argument in two cases previously and rejected the exact same argument there. I found this in my research yesterday doing a little deeper dive. It's in two published cases. Are they cited in your brief? It is not. That's a problem. I understand, Your Honor. If I may. In United States v. Hernandez-Rodriguez, this court rejected that precise argument. Now, Hernandez-Rodriguez was overruled by Reyes-Contreras. But then later on, this court reaffirmed the Hernandez-Rodriguez rejection of that argument in Torres-Jaime. I'm sorry. Do you have a citation for Torres? I do, if you will. Torres-Jaime is 821 Federal 3rd, 577. I do not have the pin site to that location at this point. I can certainly provide that later. But Torres-Jaime reiterates what the argument the government forwards here. And so this is not a novel concept. So I'm looking at Torres-Jaime. And we're talking in Judge Graves writing an opinion for our court is talking about Georgia Code section 16, 521A2, which brings me back to something that I think Judge Engelhardt started the argument with, which is since you don't have any authority under subsection 7 of the Louisiana revised statutes that is at issue here, I don't understand even how the plain error inquiry would map on. I mean, it seems like whatever you're asking for, I mean, at most it sounds like you're asking us to apply the decision about Georgia Code section 16, 521A2 to a provision of Louisiana revised statutes. Near the end of Torres-Jaime is where we find that court referring back to arguments about the statutes at issue here, and particularly what they described in section 14, 2A of the Hernandez-Rodriguez. And I believe it cites page 199 of the Hernandez-Rodriguez case and says, if I don't have it in front of me at the moment, but it says, we rejected this argument in that case. So yes, yes, Torres-Jaime does deal with the Georgia statutes, but it reaffirms what Hernandez-Rodriguez had already stated regarding the applicability of the dangerous weapon element in the state of Louisiana. So then going back to Garner, Garner obviously mixes and matches, as I said, the rules that applies for general intent crimes, which makes sense. If Garner stands for the proposition that general intent crimes in Louisiana are not crimes of violence under the sentencing guidelines, then it makes sense why Garner was unconcerned with what page of Boner it cited to, because Boner addresses exclusively on page 138 that domestic abuse aggravated assault statute that we have at issue here. Boner could have, I'm sorry, Garner could have cited any number of other cases that dealt with the aggravated assault with a firearm statute. It chose not to. Instead, what it did was it cited to a statute that is at issue here. Why? Because it did not matter. At the point that the Garner court had already determined that its conclusion dealt with Louisiana's general intent crimes, it didn't matter whether, and forgive me as I am having an extremely dry mouth at this point, it didn't matter whether the court cited to domestic abuse aggravated assault or aggravated assault with a firearm because the statutes in both cases are general intent crimes. And because my mouth is so dry that I can barely speak, I'll see the remainder of my time, if I may, to come back on rebuttal. And thank you to the court. Thank you, counsel. You have reserved five minutes for rebuttal. We'll hear now from Ms. Mundell. Good morning, Your Honors. Amanda Mundell on behalf of the United States. I'll just touch on the crime of violence issue that the court has been discussing. I think as the court's questions have noted, Mr. Forbido hasn't identified a single Louisiana case that has ever applied this particular statute to negligent conduct. And that alone is enough to doom his claim. Of course, we continue to submit that this particular statute is a crime of violence under the guidelines under, at a minimum, the enumerated offense clause. But of course, this court need not make that determination. It can simply affirm on the second or third prongs of the plain error standard. And just to flesh that out for a moment, Garner doesn't control the outcome in this case because Garner concerns a different offense. And we acknowledge that that statute has some similarities to this one, but this court's plain error precedent is pretty clear. The court doesn't find error or find plain error unless there is precedent on point. And as I've noted, there isn't any. As far as the other cases that counsel has cited, I regret because they aren't in the brief. I'm not familiar with those, so I can't respond to those particular arguments. But I do understand that there is no Louisiana case here applying the statute to negligent conduct. And as I've said, that alone is enough to do Mr. Forbido's claim, either on the first prong or on the second prong, where he has to show a reasonable probability that Louisiana would apply the statute in this particular way. And of course, even if the court were inclined to find it a close call on the third prong of the plain error standard, the district court made it clear that the court would have imposed the same sentence regardless of any error in the calculation of the guidelines. Your Honors, unless there are other questions, we would submit on our briefs and just ask that the court affirm. Thank you. Counsel? Rebuttal? First of all, thank you, Your Honors, for your understanding with my dry mouth. Let me simply address then what we did not take the opportunity to address in my prior arguments, and that is something they've raised as the third prong here. In this case, what we have is a judge that tied its sentence to a wrongly calculated guideline without any consideration of the correct guideline. Both parties in this case argued for sentences within the improperly calculated guideline range. The government argued for one at the top of that range. The defendant argued for one at the bottom of it. But he does say, the judge does say, even if the guidelines are improperly calculated, that given the facts and circumstances of the case, that that's the sentence that he should have. What weight should we give to that in light of your arguments about the range being calculated wrong? Your Honor, if you would, the wording of the court is very important here. The court did not say that it would be the same sentence. Instead, it postulated that it thought it would be the same sentence. The court twice in the sentencing hearing alternated back and forth within a very short time in two instances, alternated between its intentional use of the word think and the intentional use of the word know. You'll find that on page 110 of the record. It's the very beginning of the sentencing hearing. It's where we are seeing the court come to order. And it appears that the court is going back through a conversation about who was present for COVID protocol announcements. And there, the court initially stated that it, quote, knew that Mr. Forbido had been present for that announcement, but then quickly backtracks and changes its verbiage and says, I think that you were present for it. We see a similar change between think and know then at the conclusion, when he makes that statement that is at issue here. It says, I still think that the sentence would be the same if the guideline calculations were wrong, but then it immediately follows with a statement of the court's confidence, saying that it, quote, knows that it should put mental health treatment into the judgment. In other words, the court's alternating between know and think indicates its certainty with regards to what it knew and its uncertainty about what it thought. And so we don't have confidence that the court was making a statement that it was certain or that, as in the six cases that the government has cited, that it would have imposed the same sentence. Instead, it postulated that perhaps this is what it thought the court would impose if the guidelines were calculated otherwise. And with that, unless there are further questions, I thank the court for its time. Okay. Thank you, counsel. We appreciate your arguments here today and your fine briefing. We will consider the matter submitted.